1
2
3
4

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

5
6
7
8

| | |
|---|---|
| SCOTT A. MCDANIEL, | **CV No. CV 10-6143 HO** |
| Plaintiff, | **PLAINTIFFS FIRST AMENDED COMPLAINT** |
| v. | |
| BAC HOME LOANS SERVICING LP; | |
| RECONTRUST COMPANY NA; MORTGAGE | **FOR CLAIMS OF FRAUDULENT ASSIGNMENT; VIOLATOINS OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) 2605(e); VIOLATIONS OF FEDERAL TRUTH IN LENDING ACT; VIOLATION OF FAIR CREDIT REPORTING ACT; FRAUDULENT MISREPRESENTATION; BREACH OF FIDUCIARY DUTY; UNJUST ENRICHMENT; CIVIL CONSPIRACY; TO SET ASIDE ILLEGAL TRUSTEE SALE;  TO QUIET TITLE; USURY ACTS; PREDATORY LENDING; UNFAIR DEBT COLLECTION PRACTICES; SLANDER OF TITLE; FRAUDULENT FORCLOSURE; and REFUSAL OF PAYMENT** |
| ELECTRONIC REGISTRATION SYSTEMS INC.; | |
| THE BANK OF NEW YORK MELLON | |
| CORPORATION; CHRISTINA BALANDRAN; | |
| DIANE BOLTON; DANIEL B. RODRIGUEZ; | |
| JONATHAN JACKSON; E.L. HOWARD; LUCY | |
| MANSOURIAN; PETER LOPEZ; STACEY L. | |
| BLOUIN; JANINE R. WRIGHT; KARLA MERIDA; | |
| SUMMIT MORTGAGE  CORPORATION; | **JURY TRIAL DEMANDED** |
| and DOES 1-50 | |
| Defendants, | |

SCOTT MCDANIEL
25225 CULTUS LANE
BEND, OR 97701
Attorney pro se
Mcdaniel.cultus@gmail.com
541-323-1799  Tel.

# COMPLAINT

PLAINTIFF SCOTT A. MCDANIEL sues defendants BAC HOME LOANS SERVICING LP; RECONTRUST NA,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON

CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN

JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT

KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 for money damages and states:

## JURIDICTION AND VENUE

1. This is an action for money damages in excess of $250,000.

2. At all times material to this lawsuit, SCOTT A. MCDANIEL was a resident of Deschutes County, Oregon.

3. The underlying property of this controversy is located in the jurisdiction of the 9th United States District Court, District of Oregon, Eugene Division, located in Lane County, Oregon.

4. Deschutes County is the location of the real property located at 25225 Cultus Lane. Bend, Oregon 97701.

## THE PARTIES

5. Plaintiff, SCOTT A. MCDANIEL is the owner of the property identified in the Deschutes County land records as BEND CASCADE VIEW ESTATES TRACT 2 UNIT 3 LOT 60, commonly known as 25225 Cultus Lane, Bend Oregon 97701.

6. Plaintiff, SCOTT A. MCDANIEL resides at 25225 Cultus Lane, Bend Oregon 97701.

7. Defendant BAC HOME LOANS SERVICING LP, (hereinafter "BAC") is a California Corporation Subsidiary of BANK OF AMERICA, N. A. "BAC" also maintains a principal place of business at 450 American Street, Simi Valley, California.

8. Defendant RECONTRUST COMPANY NA, (hereinafter "RECONTRUST") is a whole owned subsidiary of BANK OF AMERICA, N. A. "RECONTRUST" maintains a principal place of business at 1800 Tapo Canyon Road, Simi Valley, CA 93063.

9. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. refers to itself and is hereinafter also referred to as ("MERS") is organized and existing under the Laws of Delaware, and maintains its principal place of business at 1818 Library Street, Suite 300, Renton, VA 20190 with its mailing address at P. O. Box 2026 Flint, Michigan 48501-2026.

10. Defendant THE BANK OF NEW YORK MELLON CORPORATION f/k/a THE BANK OF NEW YORK, (hereinafter "BNYMELLON") maintains Corporate Headquarters One Wall Street, New York, NY 10286.

11. Defendant CHRISTINA BALANDRAN, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and believed to reside at 4110 Valley Fair Street, Simi Valley, CA 93063.

12. Defendant DIANE L. BOLTON, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and believed to

reside at 9350 Moonbeam Ave., Unit 16, Los Angeles, CA 91402 as recorded with The California Secretary Of State Notary Division. California Notary #1713029

13. Defendant DANIEL B. RODRIGUEZ, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and whose mailing is believed to be at 490 North Whitney, Dinuba, CA 93618 as recorded with The California Secretary Of State Notary Division. California Notary #1733980

14. Defendant JONATHAN JACKSON, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063.

15. Defendant E.L. HOWARD, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and whose mailing is believed to be at 6328 Deerbrook Road, Oak Park, CA 91377 as recorded with The California Secretary Of State Notary Division. California Notary #1733980 and California Notary #1901815.

16. Defendant LUCY MANSOURIAN, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and whose mailing is believed to be at 11826 McLennan Ave, Granada Hills, CA 91344 as recorded with The California Secretary Of State Notary Division. California Notary #1775098.

17. Defendant PETER LOPEZ, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063.

18. Defendant STACEY L. BLOUIN, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063.

19. Defendant JANINE R. WRIGHT, believed to be an employee of "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063 and whose mailing is believed to be at 8521 Fallbrook Ave., West Hills, CA 91304 as recorded with The California Secretary Of State Notary Division. California Notary #1797201. The California Secretary Of State Notary Division lists JANINE R. WRIGHT's employer as Bank of America.

20. Defendant KARLA MERIDA, believed to be an employee "RECONTRUST", whose principal location of business is at 1800 Tapo Canyon Road, Simi Valley, CA 93063.

21. Defendant SUMMIT MORTGAGE CORPORATION, (hereinafter "SUMMIT") maintains a place of business at 233 SW Wilson Ave., Suite 1, Bend OR 97702.

22. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50 inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

# GENERAL AND FACTUAL ALLEGATIONS

23. Plaintiff on October 23, 2006 refinanced his home located at 25225 Cultus Lane, Bend Oregon 97701.

24. Plaintiff used service of mortgage broker "SUMMIT" for the refinance.

25. Plaintiff told "SUMMIT" that he and his wife wished to refinance their house and that they had three primary criteria:

    A) That they wanted consolidate his existing First and Second Mortgage totaling approximately $199,000.

    B) That they wanted a fixed rate loan.

    C) That they wanted to pay for all of the fees out of equity in the home.

26. Defendant "SUMMIT" brokered Plaintiff a loan in the amount of $255,000 nearly 25% more than the amount Plaintiff sought.

27. The loan was originated by DECISION ONE MORTGAGE COMPANY, LLC, a subsidiary of HSBC BANK with offices located at 15220 NW Laidlaw Road STE. 200, Portland, Oregon, 97229.

28. DECISION ONE MORTGAGE COMPANY, LLC, a subsidiary of HSBC BANK has corporate offices located at 3023 HSBC Way, Fort Mill, South Carolina, 29715 on October 17, 2006.

29. The "Deed of Trust" (hereinafter "DOT 2006-71660") that was used as a "Security Instrument" in connection with the aforementioned refinance was dated October 17, 2006.

30. The "DOT 2006-71660" was signed on October 23, 2006.

31. The "DOT 2006-71660" was recorded with the Deschutes County Recorder's Office on October 23, 2006 and recorded as Instrument Number 2006-71660.

32. The "DOT 2006-71660" lists the "Lender" as DECISION ONE MORTGAGE COMPANY, LLC.

33. The "DOT 2006-71660" lists the "Trustee" as PACIFIC NORTHWEST TITLE INS. CO., 215 Columbia Street, Seattle, Washington, 98104.

34. The "DOT 2006-71660" attempts to declare "MERS" as the beneficiary under this Security Instrument.

35. DECISION ONE MORTGAGE, LLC., the loan "Originators" and the original "Lender" rarely lend their own money as evidenced by their disclosure that 100% of their loans originated in 2003, 2004 and 2005 were sold.

36. The loan was originated, funded, sold on multiple occasions.

37. In April of 2009 Plaintiff became late on the payments for said loan. Plaintiffs continued to make payments after the stated "late date" but never more than 60 days past the scheduled "due date", and continued to make payments every 30 days for the next three months.

38. In September 2009 "BAC" refused to take a mortgage payment over the phone in the amount of $1,825.73 stating that they refused to accept payment of anything less than the full amount due of the current and past payment.

39. The amount of $1,825.73 represented one full month's payment including the late fee.

40. Under the "ADJUSTABLE RATE NOTE" (hereinafter "Note") **see Attached "Exhibit 1"** at this point "BAC" had not given Plaintiff any "Notice of Default" or "Notice of Intent to Accelerate".

41. "BAC" refusal of the "Tender of Payment" is not permitted in the "Note" unless a "Notice of Default" or "Notice of Intent to Accelerate" has been given to the borrower.

42. On numerous occasions "BAC" was contacted by Plaintiff to make arrangements to bring arrears payments current.

43. "BAC" refused to allow Plaintiff to bring the payments current with anything less than a lump sum payment of all amounts owing.

44. Defendant "RECONTRUST" on December 28, 2009 caused an "ASSIGNMENT OF DEED OF TRUST" (hereinafter "DTAS 2009-54494") **see Attached "Exhibit 2"**, to be recorded with the Deschutes County Recorder's Office recorded as Instrument Number 2009-54494, purporting to assign the "DOT 2006-71660" to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as TRUSTEE FOR CERTIFICATEHOLDERS CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OC11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC11, C/O BAC HOME LOANS SERVICING, LP.

45. The "DTAS 2009-54494" was signed on October 23, 2009 by "RECONTRUST" employee CHRISTINA BALANDRAN as purported "Assistant Secretary" for the MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

46. The "DTAS 2009-54494" was notarized on October 23, 2009 by DIANE L. BOLTON.

47. Defendant "RECONTRUST" on December 28, 2009 caused an "APPOINTMENT OF SUCCESSOR TRUSTEE" (hereinafter "AST 2009-54495") **see Attached "Exhibit 3"**, to be recorded with the Deschutes County Recorder's Office recorded as Instrument Number 2009-54495, purporting to appoint "RECONTRUST" as Successor Trustee for "DOT 2006-71660".

48. The "AST 2009-54495" was signed on October 23, 2009 by "RECONTRUST" employee CHRISTINA BALANDRAN but this time now purporting to be a duly authorized by person by

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as TRUSTEE FOR CERTIFICATEHOLDERS CWALT, INC. ALTERNATIVE LOAN TRUST 2006-OC11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC11.

49.  The "AST 2009-54495" was also notarized on October 23, 2009 by DIANE L. BOLTON.

50.  Defendant "RECONTRUST" on December 28, 2009 caused a "NOTICE OF DEFAULT AND ELECTION TO SELL" (hereinafter "NOD 2009-54496") **see Attached "Exhibit 4"**, to be recorded with the Deschutes County Recorder's Office recorded as Instrument Number 2009-54496.

51.  The "NOD 2009-54496" was signed on October 23, 2009 by "RECONTRUST" employee DANIEL B. RODRIGUEZ as purported "Team Member"

52.  The "NOD 2009-54496" was also notarized on October 23, 2009 again by DIANE L. BOLTON.

53.  Defendant "RECONTRUST" on December 31, 2009 served Plaintiffs with "NOD 2009-54496" demanding full payment in the amount of $255,000.00 with an interest rate of 7% per annum beginning 08/01/2009 until paid, plus all accrued late charges thereon together with the title expense, costs, trustees fees, and attorney's fees incurred herein by reason of said default.

54.  Defendants have proven a pattern and practice of noncompliance with regulatory statutes.

55.  Defendants have a history predatory lending and fraudulent foreclosure practices.

56.  Plaintiff on numerous occasions requested specific information of "BAC" and "RECONTRUST" including but not limited to providing proof of ownership and possession of the "Note" and "DOT 2006-71660". However, despite numerous requests "BAC" and "RECONTRUST" refused to provide any such proof.

57.  On 02/02/2010 Plaintiff sent Defendants a **"Qualified Written Request"** (hereinafter "QWR") **see Attached "Exhibit 5"** in compliance with and under the REAL ESTATE SETTLEMENT PROCEDURES ACT (hereinafter "RESPA"), 12 U.S.C. Section 2605(e) delivered via the United States Postal Service Certified Mail Return Receipt Requested.

58.  Plaintiff sent Defendant "BAC" the "QWR" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0789 **see Attached "Exhibit 6"**.

59.  Plaintiff sent Defendant "RECONTRUST" the "QWR" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0772 **see Attached "Exhibit 7"**.

60. Plaintiff sent Defendant LUCY MANSOURIAN the "QWR" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0741 **see Attached "Exhibit 8"**.

61. On 03/03/2010 "BAC" acknowledged they had received Plaintiff's correspondence and would treat it as "Qualified Written Request" under RESPA 12 U.S.C. Section 2605(e) **see Attached "Exhibit 9"**.

62. On May 3, 2010 the Law Firm Dilworth Paxson claiming to represent "BAC" replied to the Plaintiff's "QWR" **see Attached "Exhibit 10".**

63. Plaintiff alleges that "BAC" has failed to fully comply with a "Qualified Written Request" in compliance with, and under the Real Estate Settlement Procedures Act 12 U.S.C. 2605 **see Attached "Exhibit 11"** as outlined by HUD.

64. Plaintiff requested information that the Defendant "BAC" refused to answer stating "These request are overly broad, do not concern the application of payments or the disbursement of funds to the borrower...". "RESPA" 12 U.S.C. Section 2605(e)(2)(B) states....

> (C) after conducting an investigation, provide the borrower
> with a written explanation or clarification that includes--
> (i) information requested by the borrower or an
> explanation of why the information requested is unavailable
> or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual
> employed by, or the office or department of, the servicer
> who can provide assistance to the borrower.

65. Plaintiff, in the "QWR", requested: "Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;"

66. The Pooling and Servicing Agreements and Prospectus are public records and required to be filed with the Securities Exchange Commission.

67. Plaintiff alleges that the Defendants refusal to provide these documents is an attempt and continued pattern and practice of none compliance with regulatory requirements.

68. These Pooling and Servicing Agreements outline the exact procedures and protocols required for the assignment of Successor Trustees, handling of the Pooled Notes, as wells as all other aspects of the security, including the time of the offering, "Cut-Off Date", "Closing Date" and how the "Assignment of Mortgage Loans" are to be handled.

69. Due to the requirement of the Pooling and Servicing Agreements and Prospectus being filed with the Securities Exchange Commission, these documents do not contain "Trade Secrets" or "Propriety Information".

70. The Defendant "BAC" failure to comply with "QWR" and provide the requested documents is an attempt to obscure the true holder of the note and obstruct the investigation of the chain of title.

71. The Ownership of the "Note" and the true and correct chain of title and authorization to service a loan are core issues of RESPA 12 U.S.C. Section 2605. If an alleged servicer of a "Note" cannot provide evidence that they are rightfully untitled and authorized, then they cannot collect funds from a borrower and/or bring actions against a borrower. Failure for a servicer to have been legally and correctly assigned such rights would be a violation both state and federal laws.

72. RESPA 12 U.S.C. Section 2605 does not limit the number of questions or requests that a borrower can present in a "Qualified Written Request", nor does it limit borrower's inquiries to only that of questions pertaining to possible errors, as it specifically states "that the account is in error **or** provides sufficient detail to the servicer regarding other information sought by the borrower"

73. "RESPA" 12 U.S.C. Section 2605(e)(1)(B) states....

     (B) Qualified written request

     For purposes of this subsection, a qualified written request

     shall be a written correspondence, other than notice on a

     payment coupon or other payment medium supplied by the servicer,

     that--

     (i) includes, or otherwise enables the servicer to

     identify, the name and account of the borrower; and

     (ii) includes a statement of the reasons for the belief

     of the borrower, to the extent applicable, that the account

     is in error **or** provides sufficient detail to the servicer

     regarding other information sought by the borrower.

74. Although Dilworth Paxson's reply answered only but a handful of the over 190 questions and requests for documentation, one question that was answered was whom the alleged owner of "Note" was and purported to currently be owned by THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK as Trustee for Certificateholders CWALT, INC. Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11, with an address of 101 Barclay Street, #22-7, New York, NY 10286.

75. Once armed with the name of the alleged owner of the "Note" the Plaintiff obtained a copy of the Form 424B5, the "Prospectus" that CWALT, Inc. filed with the Securities Exchange Commission in the formation of the Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11 **see Attached "Exhibit 12"**.

76. The Form 424B5 for Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11 contains not only the "Prospectus" but also the "Pooling and Servicing Agreement" (hereinafter "PSA") for the trust.

77. Form 424B5 stipulates on page S-5 on **Attached "Exhibit 12"** that the "Cut-off Date" For any mortgage loan conveyed to the issuing entity on the closing date, the later of December 1, 2006 and the date of origination for that mortgage loan (the "initial cut-off date").

78. Form 424B5 stipulates on page S-6 on **Attached "Exhibit 12"** that the "Closing Date" is "On or about December 29, 2006."

79. The CWALT, INC. Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11 was formed under the strict New York State Trust Laws as stipulated in Form 424B5 on page S-4 on **Attached "Exhibit 12"** "Alternative Loan Trust 2006-OC11, a common law trust formed under the laws of the State of New York".

80. The Defendant's attempt to assign "DOT 2006-71660" into the CWALT, INC. Alternative Loan Trust 2006-OC11, Mortgage Pass-Through Certificates, Series 2006-OC11 nearly three years to the day after the investment trust closed is a fraudulent act.

81. Form 424B5 stipulates on page S-63 on **Attached "Exhibit 12"** that "Pursuant to the Pooling and Servicing Agreement, on the Closing Date, the Depositor will sell, transfer, assign, set over and otherwise convey without recourse to the Trustee in trust for the benefit of the certificateholders all right, title and interest of the Depositor in and to each Closing Date Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2006-OC11, including all principal and interest received on or with respect to the Closing Date Mortgage Loans, but not any principal and interest due on or before the initial cut-

off date, and amounts on deposit in the Pre-funding Account and the Capitalized Interest
Account on the Closing Date." and "In connection with the transfer and assignment of a
Mortgage Loan, the Depositor will deliver or cause to be delivered to the Trustee, or a custodian
for the Trustee, the mortgage file, which contains among other things:..... an assignment in
recordable form of the mortgage or a copy of such assignment,"

82.    If the "Note" was sold, transferred, assigned, set over and otherwise conveyed without the Deed
of Trust, then the Mortgage is a nullity "Carpenter v. Longan, 83 U.S. 271, 274, (1872). (Where
negotiable note is secured by mortgage, "the note and mortgage are inseparable..., the
assignment of the note carries the mortgage with it, while an assignment of the latter alone is a
nullity.")

83.    Furthermore the assignment "DTAS 2009-54494" **see Attached "Exhibit 2"** was signed on  by
CHRISTINA BALANDRAN as purported "Assistant Secretary" for the MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") an claiming to be the "Beneficiary"
however, the Honorable Judge Elizabeth Perris in the filed an opinion in re Fred Allman, Case
No. 08-31282-elp7 **see Attached "Exhibit 13"** concluding that "It is apparent that the listing of
MERS as beneficiary in the deed of trust is merely to facilitate its ownership tracking function. It
is not in any real sense of the word, particularly as defined in ORS 86.705(1), the beneficiary of
the trust deed.

84.    Accord Southwest Homes of Ark., 301 S.W.3d at 4 (MERS was not the beneficiary, even though
designated as beneficiary in the trust deed).

85.    The "DOT 2006-71660" makes clear that MERS is merely a nominee for the lender, and that the
trust deed is for the benefit of the lender. A nominee is "a person designated to act on behalf of
another, usu. in a very limited way." Black's Law Dictionary 1076 (8th ed. 2004).

          A nominee is also a "person who holds bare legal title for the
          benefit of others or who receives and distributes funds for the
          benefit of others." Id.

86.    The relationship of MERS to the Lender "is more akin to that of a straw man than to a party
possessing all the rights given a buyer." See Landmark Nat'l Bank v. Kesler, 289 Kan. 528, 539
(2009).

87.    "MERS" was not registered with the Secretary of State in Oregon during all material times and
was not registered with the Secretary of State in Oregon at the time the Trustee's Notice of Sale
was filed and recorded.

88. According to Christopher L. Peterson, Associate Dean of Academic Affairs and Professor of Law, University of Utah, S.J. Quinney College of Law, in his paper titled FORECLOSURE, SUBPRIME MORTGAGE LENDING, AND THE MORTGAGE ELECTRONIC REGISTRATION SYSTEM, **see Attached "Exhibit 14"** "mortgage finance companies use MERS' name as a proxy in county land title records in order to avoid paying taxes to local governments for recording assignments during the life of a loan". He also concludes that "MERS' claim to own legal title to a mortgage loan's security interest, divorced from the promissory note and entitlement to receive loan payments, is in direct tension with precedent that has been well settled for over a hundred years". And additionally states "MERS' role in prosecuting home mortgage foreclosures should bring it within the scope of the federal Fair Debt Collection Act—a statute that MERS has generally made little attempt to comply with".

89. "MERS" was not registered with the Secretary of State in Oregon during all material times and was not registered with the Secretary of State in Oregon at the time the "ASSIGNMENT OF DEED OF TRUST" - "DTAS 2009-54494" filed and recorded.

90. On March 4, 2010 Plaintiffs deposited funds in the amount of $275,000.00 representing $255,000.00 with an interest rate of 7% per annum beginning 08/01/2009 until paid, plus all accrued late charges thereon together with the title expense, costs, trustees fees, and attorney's fees. Notary Witness Cynthia Horner was instructed to deliver Notice of Tender of Payment to "BAC" and exchange said funds for the Original Promissory Note that the Lenders/Agents allege to hold as collateral for Loan Number 154164052-8 in connection with above referenced property.

91. Notary Witness, Cynthia Horner, was instructed to hold these funds for 20 business days in order for Lenders/Agents to have ample time to produce the "Note" and collect funds.

92. On March 4, 2010 Notary Witness, Cynthia Horner, under Certificate of Service **see Attached "Exhibit 15"** and Due Presentment Under Notary Seal **see Attached "Exhibit 16"** delivered Notice of Tender of Payment **see Attached "Exhibit 17"** to Defendants by Priority Mail Certified Mail Return Receipt Requested.

93. Notary Witness, Cynthia Horner sent Defendant "BAC" the Notice of Tender of Payment delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0789 **see Attached "Exhibit 18"**.

94. Notary Witness, Cynthia Horner sent Defendant "BAC" the Notice of Tender of Payment delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0802 **see Attached "Exhibit 19"**.

95. Notary Witness, Cynthia Horner sent Defendant "RECONTRUST" the Notice of Tender of Payment delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0000 6446 0819 **see Attached "Exhibit 20"**.

96. Notary Witness, Cynthia Horner sent Defendant "MERS" the Notice of Tender of Payment delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2820 0001 8849 4783 **see Attached "Exhibit 21"**.

97. As confirmed by the United States Postal Service and return of Certified Mail Receipts all Defendants had received the "Notice of Tender of Payment".

98. On April 2, 2010 Notary Witness, Cynthia Horner, sent all Defendants a "NOTICE OF FAULT WITH REGARD TO THE FAILURE OF LENDERS/AGENTS TO COLLECT FUNDS HELD BY NOTARY WITNESS TO SETTLE ACCOUNT #154164052-8" **see Attached "Exhibit 22"**, under Certificate of Service **see Attached "Exhibit 23"** and Due Presentment Under Notary Seal **see Attached "Exhibit 24"** delivered by Priority Mail Certified Mail Return Receipt Requested, for their failure to collect funds held by Notary Witness.

99. Notary Witness, Cynthia Horner sent Defendant "BAC" the "NOTICE OF FAULT WITH REGARD TO THE FAILURE OF LENDERS/AGENTS TO COLLECT FUNDS HELD BY NOTARY WITNESS TO SETTLE ACCOUNT #154164052-8" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2250 0002 1682 4497 **see Attached "Exhibit 25"**.

100. Notary Witness, Cynthia Horner sent Defendant "RECONTRUST" the "NOTICE OF FAULT WITH REGARD TO THE FAILURE OF LENDERS/AGENTS TO COLLECT FUNDS HELD BY NOTARY WITNESS TO SETTLE ACCOUNT #154164052-8" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2250 0002 1693 7050 **see Attached "Exhibit 26"**.

101. Notary Witness, Cynthia Horner sent Defendant "MERS" the "NOTICE OF FAULT WITH REGARD TO THE FAILURE OF LENDERS/AGENTS TO COLLECT FUNDS HELD BY NOTARY WITNESS TO SETTLE ACCOUNT #154164052-8" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 1410 0001 2517 6604 **see Attached "Exhibit 27"**.

102. On April 14, 2010 Notary Witness Cynthia Horner issued an Affidavit of "COMMERCIAL OATH AND VERIFICATION OF FINAL NOTICE OF DEFAULT" **see Attached "Exhibit 28"** and delivered to all Defendants under Certificate of Service **see Attached "Exhibit 29"** and Due Presentment Under Notary Seal **see Attached "Exhibit 30"** by Priority Mail Certified Mail Return Receipt Requested.

103. Notary Witness, Cynthia Horner sent Defendant "BAC" the Affidavit of "COMMERCIAL OATH AND VERIFICATION OF FINAL NOTICE OF DEFAULT" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2250 0003 8128 2764 **see Attached "Exhibit 31"**.

104. Notary Witness, Cynthia Horner sent Defendant "RECONTRUST" the Affidavit of "COMMERCIAL OATH AND VERIFICATION OF FINAL NOTICE OF DEFAULT" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2250 0003 8128 2771 **see Attached "Exhibit 32"**.

105. Notary Witness, Cynthia Horner sent Defendant "MERS" the Affidavit of "COMMERCIAL OATH AND VERIFICATION OF FINAL NOTICE OF DEFAULT" delivered via the United States Postal Service Certified Mail Return Receipt Requested 7009 2250 0003 8128 2788 **see Attached "Exhibit 33"**.

106. In the replied to the Plaintiff's "QWR" **see Attached "Exhibit 10"** dated May 3, 2010 the Law Firm Dilworth Paxson claiming to represent "BAC" also referenced the Notice of Tender of Payment in referring to it as Letter dated March 4, 2010. However, the reply came a month after the Notice of Tender of Payment had expired.

107. This gives Plaintiff reason to believe that Defendants are not in possession of the "Note" in due course and therefore were unable to collect the funds as they must not be in possession of the "Note" with unbroken chain of title.

108. Plaintiff alleges that Defendants must be in possession of both the "Note" and the "DOT 2006-71660" in due course with unbroken chain of title in order to foreclose.

109. Plaintiff alleges that Defendants have violated Oregon, California and Federal Notary Law, Rules and Regulations.

110. Plaintiff alleges that Defendants have notarized signatures knowing full and well that the signatures were not that of CHRISTINA BALANDRAN. **see Attached "Exhibits 34-53"**

111. Plaintiff alleges that Defendants have notarized signatures knowing full and well that the signatures were not that of KARLA MERIDA. **see Attached "Exhibits 54-64"**

112. Plaintiff alleges that Defendants have notarized signatures knowing full and well that the signatures were not that of LUCY MANSOURIAN. **see Attached "Exhibits 54-64"**

113. Plaintiff alleges that Defendants have notarized signatures knowing full and well that the purported signer was not present before at the time of signing documents .

114. According to the DEED OF TRUST submitted to the court by the Defendants for Judicial Notice, the Mortgage was sold to Countrywide with Title received on 11/29/2006. However, there are no such recording in the Deschutes County Recorder's Office showing an Assignment of the "DOT 2006-71660".

115. Defendants' submission of this document is further evidence that "DOT 2006-71660" was sold multiple times without correct assignment breaking the chain of title.

116. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of defendants sued herein was the agent, employee, assignee, predecessor or successor in interest of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and/or employment.

# NATURE OF THE ACTION

117. This case arises out of Defendants' egregious and ongoing and far reaching fraudulent schemes for improper use of Plaintiff's identity, fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary obligations as Mortgagee or "Trustee" on the Deed of Trust, "Mortgage Brokers," "Loan Originators," "Loan Seller," "Mortgage Aggregator," "Trustee of Pooled Assets," "Trustee or officers of Structured Investment Vehicle," "Investment Banker," "Trustee of Special Purpose Vehicle/Issuer of Certificates of 'Asset-Backed Certificates,'" "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund. The participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Plaintiff and other investors in certain trust funds.

118. In addition to seeking compensatory, consequential and other damages, Plaintiff seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner of the promissory note executed at the time of the loan closing, and whether the Deed of Trust (Mortgage) secures any obligation of the Plaintiff, and A Mandatory Injunction requiring re-conveyance of the subject property to the Plaintiff or, in the alternative a Final Judgment granting Plaintiff Quiet Title in the subject property.

119. On information and belief, Plaintiff alleges that on October 23, 2006, Plaintiff was led to believe he was entering into a loan agreement with Decision One Mortgage Corp, for $255,000.00

120. On information and belief, Plaintiff alleges that immediately after closing the refinance loan, Plaintiff was instructed by Decision One Mortgage Corp to make all his payments on the loan to Countrywide Home Loan Servicing.

121. On information and belief, Plaintiff alleges that Defendants BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 are business entities and real persons that initiated an illegal non-judicial foreclosure sale proceeding under an alleged power of sale to foreclose contained in an alleged note allegedly secured against the property located 25225 Cultus Lane, Bend Oregon 97701 (hereinafter "the subject property").

122. Plaintiff is informed and believes, and thereupon alleges that said "Note", has long since been lost or intentionally destroyed, or paid in full, or assigned to a third party, such that BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 lacks or lacked standing to initiate a foreclosure proceeding against the subject property.

123. Plaintiff is informed and believes, and thereupon alleges that Defendants, BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 have conspired to conducted a Trustee's sale of the subject real property ostensibly to collect an allegedly unpaid balance on an alleged note allegedly secured by the security instrument that was recorded on October 26, 2006, as Inst No. 2006-71660 in the Deschutes County Recorder's Office.

124. Upon information and belief, BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION;

CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50, is not and was not the holder in due course of the note, payment of which was secured by the security instrument, nor is it or was it in possession of the note properly endorsed to it, nor was it the holder in due course of the note when it initiated foreclosure proceedings, nor was it or is it otherwise entitled by law in the State of Oregon to initiate foreclosure under the security instrument.

125. BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 has had no right to initiate foreclosure under the security instrument, nor did they have the right to direct the Trustee to foreclose and sell the subject property owned by Plaintiff. BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 knew or reasonably should have known that they had no right to foreclose the security instrument unless and until it actually has in its possession the original note properly endorsed to it or assigned to it as of the date preceding the notice of default recorded by the Trustee.

126. Plaintiff alleges that the Defendants and each of them, in so acting in this case and with respect to many other mortgage or trust deed security instruments engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of the State of Oregon to foreclose on properties when they do not, in fact, have the right to do so, knowing that the property owners affected do not have the knowledge and means to contest the right of said Defendants to do so.

127. The subject property is unique, as the Plaintiff designed and built the home himself. Therefore, should Defendants, and each of them, not be enjoined, Plaintiff will suffer irreparable injury for which there is no adequate remedy in law when Defendants proceed to sell the subject property to a third party who might be a bonafide purchaser for value.

128. In all of the wrongful acts alleged in this complaint, the Defendants and each of them have utilized the United States mail in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled under the law to do so.

129. Defendants and each of them, in committing the acts alleged in this and other cases are engaging in a pattern of unlawful activity.

130. As a result thereof, Plaintiff has been damaged in having his credit adversely effected, the title to his property clouded, his name and reputation tainted because of repeated postings in local papers and online websites indicating that his home is going to be sold at auction for allegedly being in default to creditors that have no legal standing to foreclose on Plaintiff's property. To have to spend hundreds of hours as attorney pro se bring this action, and has had to and will have to incur additional time to stop the wrongful acts of the Defendants.  Plaintiff has been damaged in other ways that are not readily apparent at this time, but will amend this complaint to allege further damages as they are determined.

131. In pursuing non-judicial foreclosure, Defendants represented that they had the right to payment under the "Note", payment of which was secured by the security instrument.

132. The true facts were that they were not in possession of both the "Note" and "DOT 2006-71660" and they were not either holders of the note or non-holders of the note entitled to payment, as those terms are used in ORS 86.705(1), and therefore they were proceeding to foreclosure non-judicially without right under the law.  Further, they added costs and charges to the payoff amount of the "Note" that were not justified and proper under the terms of the "Note" or the law.

133. The Defendants, misrepresented the facts intending either to force Plaintiff to pay large sums of money to Defendants and each of them to which there not entitled under the law, or to abandon Plaintiff's property to foreclosure sale.

134. Plaintiff is the nominal payor on the subject promissory Note.  The Loan Seller, i.e., the Initial Lender that funded the loan, and each of them, is/was a financial institution that was paid a fee to pose as a residential mortgage lender, when in fact the source of loan funds and the actual lender (Investors in Certificates) and underwriter (Mortgage Aggregator and Investment Banker) were other parties whose identities and receipt of fees and profits were withheld from Plaintiff and despite numerous requests continue to be withheld from Plaintiff by the Defendants contrary to the requirements of Federal Law and applicable State Law.

135. Unknown to Plaintiff, Defendant "SUMMIT", acting as the mortgage broker conspired and took affirmative steps to induce the Plaintiff into a transaction that did not and could not meet normal

underwriting standards for a residential mortgage. The Loan Seller, i.e., the Initial Lender, posed as a conventional mortgage lender thus leading Plaintiff to reasonably believe that the Loan Seller, the mortgage broker, and the loan originator had an interest in the success (repayment of the loan) of the transaction that Plaintiff was induced to believe was being executed at the time of the "closing" of the subject loan transaction.

136. In fact, the Loan Originator, "SUMMIT", and the Trustee on the Deed of Trust, had no financial stake (i.e., liability) in the transaction and no interest other than obtaining Plaintiff's signature on a "loan" that could never be repaid, contrary to representations and assurances from the conspiring participants in this fraudulent scheme. In fact, the Plaintiff relied upon the due diligence of "SUMMIT" in executing and accepting the closing documents. In fact, no "lender" was involved in the closing in the sense of an entity performing due diligence and evaluation pursuant to national standards for underwriting and evaluation risk of loaning money in a residential loan closing. Thus no bank or other financial institution actually performing under the standard, rules and regulations governing such institutions was the "lender" which is the basis for Plaintiff's cause of action for usury, to wit: that the inflated appraisal added an undisclosed cost to the loan which when added to the other terms, disclosed and undisclosed, and amortized over the real expected life of the "loan" exceeds the limits set by the State legislature for usury and is not subject to exemption because the presence of a financial institution in the transaction was a ruse in which the form of the transaction covered over and mislead the Plaintiff as to the real parties in interest and the fees generated by the production of the subject "loan transactions."

137. Their purpose was solely to collect fees, rebates, kickbacks and profits that were never disclosed to Plaintiff and have only recently been discovered by Plaintiff through consultation with experts in securitization of residential mortgage loans, and diligent research including the filings of some parties with the Securities and Exchange Commission which disclose the normal manner of operating this fraudulent scheme.

138. In order for the Defendants to maintain legal standing in connection with the subject loan transaction they are required to show the entire chain of title of the note and the entire chain of title of the mortgage. They refused to do this despite numerous requests, leading Plaintiff to conclude that Defendants cannot produce such evidence of a complete chain of title or are intentionally withholding the information that would show breaks in such chain.

139. Plaintiff is left in the position of being in an adversary proceeding with ghosts. While these Defendants have informally offered or considered providing indemnification for any third party claims, the fact remains that any relief awarded these defendants, any standing allowed to these defendants would expose the Plaintiff to multiple claims and suits from an unknown number of parties and entities that all claim, possibly correctly, to be holders in due course. Any grant of a certificate of title to an entity other than Plaintiff or the nominal mortgagee creates an incurable defect in title.

140. There is no recording of any document in the county records which predates the Defendant's attempt to initiate foreclosure and/or eviction which would authorize them to proceed.

141. Mortgage backed Securities (MBS) Certificates are "pass through certificates," where the Trust has elected to be treated as a Real Estate Mortgage Investment Conduit ("REMIC") to enjoy the tax exempt status allowed under 15 U.S.C. §§806A-G. REMIC regulations impose very strict limitations as to the nature of the investments a REMIC trust may make (i.e., "permitted investments") and transactions which it may not undertake (i.e., "prohibited transactions"). Any violation of REMIC regulations has significant tax implications for the Trust, as well as all Certificate holders. For example, any income realized by the Trust from a "prohibited transaction" is taxed at 100%. The REMIC regulations also provide that any entity that causes the REMIC regulations to be violated is liable to the Trust and the Certificate holders for the entire amount of tax.

142. At no time whatsoever did Defendants ever advise Plaintiffs that:

a)  the mortgage loan being processed was not in their best interest;

b)  the terms of the mortgage loan being processed were less favorable then the fixed-rate loan which Defendants previously advised Plaintiff that they qualified for;

c)  that the adjustable rate mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiff had only qualified at the initial "teaser" fixed rate but had not and could not qualify for the loan once the interest rate terms changed after year 2; that as a result of the change in interest rate after year 2. In addition, the YSP was not properly disclosed by "SUMMIT". This is an illegal kickback in violation of 12 USC sec. 2607 as well as State law which gives rise to all damages claims for all combined broker fees, costs, and attorney's fees.

143. The amount financed within the TIL is also understated which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the amount financed must be completely accurate with no tolerance.

144. Defendants were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiffs received all legally required disclosures pursuant to the Truth In Lending Act and RESPA both before and after closing.

145. Plaintiff relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and regulations.

146. At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rending Defendants "creditors" within the meaning of the Truth In Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2 (a)(17).

147. Defendants engaged in a pattern and practice of defrauding Plaintiffs during the entire life of the mortgage loan.

148. Defendants' violations were all material in nature under the Truth In Lending Act.

149. The amount stated as due and owing in the notice of default is incorrect for one or more of the following reasons: a fraudulent appraisal was used to inflate the value of the home and hence the amount of the loan, an incorrect interest rate adjustment, incorrect tax impound accounts, misapplied payments, unnecessary forced place insurance. Upon conducting discovery the reasons will be set forth with more particularity.

## CLAIMS FOR RELIEF

### COUNT I: FRAUDULENT ASSIGNMENT

150. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-149 inclusive as if set forth the same.

151. Plaintiff alleges that the placing of "MERS" on title as the "Nominee Beneficiary", of securitized instruments in order to hide the true identity of the successor assignees of the notes, including the "Note" of the Plaintiff in controversy herein. "MERS", however, comports as if it is the actual beneficiary. Plaintiff alleges that the Deed of Trust was never perfected and is a nullity as the "MERS" recording separates the Debt from the Lien.

152. Plaintiff alleges that the Defendants assigned the "DOT 2006-71660" knowing full and well that the Chain-of-Title had been broken.

153. Plaintiff alleges that the Defendants assigned the "DOT 2006-71660" knowing full and well that the Mortgage had been a Nullity as the "Note" and the "DOT 2006-71660" had been separated at an earlier point in time and made said assignment for the sole purpose of appearing to be in compliance with the Non-Judicial Foreclosure Laws with the State of Oregon.

154. Plaintiff alleges that the sequential recording of "DTAS 2009-54494", "AST 2009-54495" and "NOD 2009-54496" is further evidence that the Defendants were not the true and correct holders of the "DOT 2006-71660" in due course as they would have already been in possession of "DOT 2006-71660" correctly assigned and recorded in the Deschutes County Recorder's Office.

155. Plaintiff alleges that this sequential recording is a fraudulent attempt to try and cure title for the sole purpose of foreclosing on Plaintiff's property under a security instrument that the Defendants did not correctly possess under State, Federal, and UCC laws.

156. Plaintiff alleges that the Defendants signing and notarizing of the required documents to make said assignment were performed by the "RECONTRUST" foreclosure mill and that due diligence was not performed to verify that the Defendants actually had standing to perform such actions.

157. Plaintiff alleges that the Defendants signing and notarizing via the use of Robo-Signing procedures is flawed and has no purpose other than that of mass cover up of Mortgages that were never properly assigned.

158. Plaintiff alleges that the Defendants signing on "DTAS 2009-54494" as "MERS" as the beneficiary in the deed of trust is a direct violation of ORS 86.705(1) as "MERS" has no authority to make such an assignment.

159. As a direct result of the Defendants' actions Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT II: VIOLATOINS OF REAL ESTATE SETTLEMENT
## PROCEDURES ACT (RESPA) 2605(e)

160. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-159 inclusive as if set forth the same.

161. Plaintiff alleges that "BAC" refused to comply with RESPA" 12 U.S.C. Section 2605(e) and provide the Plaintiff with all of the requested information in the "QWR".

162. Plaintiff alleges that "BAC" refused to provide little information requested in the "QWR" because it knew full and well that the assignments were not correctly perform and that they had no standing to engage in any debt collection against Plaintiff.

163. Plaintiff provided sufficient detail to the servicer regarding other information sought by the Plaintiff about concerns pertaining to questions of bank frauds and possible improper assignments of the Note and Deed of Trust attached to the above referenced property.

164. Plaintiff alleges that these questions pertain directly to a purported loan servicer's authority to collect funds and/or bring actions against the borrower.

165. Plaintiff alleges that "BAC" refusal to comply with RESPA" 12 U.S.C. Section 2605(e) constitutes a Pattern and Practice of non-compliance with RESPA" 12 U.S.C. Section 2605(e).

166. Plaintiff alleges that the requested: "Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;" The Pooling and Servicing Agreements and Prospectus are public records and required to be filed with the Securities Exchange Commission, the defendants refusal to provide these documents is a attempt and continued pattern and practice of none compliance with regulatory requirements.

167. Plaintiff alleges that the Defendants failure to comply with the requested documents is an attempt to obscure the true holder of the note and obstruct the investigation of the chain of title.

168. The Defendants' blatant disregard for their responsibility to comply with the section clearly shows a pattern or practice of noncompliance with the requirements of the section as evident by their reply to Plaintiff's "QWR"

> U.S.C. Section 2605(f) states....
>
> (f) Damages and costs
>
> Whoever fails to comply with any provision of this section shall be
>
> liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to
>
> the sum of--

1      (A) any actual damages to the borrower as a result of the

2      failure; and

3      (B) any additional damages, as the court may allow, in the

4      case of a pattern or practice of noncompliance with the

5      requirements of this section, in an amount not to exceed $1,000.

6 169. As a direct result of the Defendants' actions Plaintiffs have suffered damages. WHEREFORE Plaintiffs

7 demand judgment against Defendants, together with such other and further relief as the Court may deem

8 reasonable and just under the circumstances.

9

10 **COUNT III: VIOLATIONS OF FEDERAL TRUTH IN LENDING ACT (TILA)**

11 170. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to

12 1-169 inclusive as if set forth the same.

13 171. Defendants failed to include and disclose certain charges in the finance charge shown on the

14 TIL statement, which charges were imposed on Plaintiffs incident to the extension of credit to

15 the Plaintiffs and were required to be disclosed pursuant to 15 USC sec. 1605 and Regulation

16 Z sec. 226.4, thus resulting in an improper disclosure of finance charges in violation of 15 USC

17 sec. 1601 et seq., Regulation Z sec. 226.18(d).  Such undisclosed charges include a sum

18 identified on the Settlement Statement listing the amount financed which is different from the

19 sum listed on the original Note.

20 172. By calculating the annual percentage rate ("APR") based upon improperly calculated and

21 disclosed amounts, Defendants are in violation of 15 USC sec. 1601 et seq., Regulation Z sec.

22 226.18(c), 18(d) and 22.

23 173. As a direct result of the Defendants' actions Plaintiffs have suffered damages. WHEREFORE Plaintiffs

24 demand judgment against Defendants, together with such other and further relief as the Court may deem

25 reasonable and just under the circumstances.

26

27 **COUNT IV: VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA)**

28 174. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to

29 1-173 inclusive as if set forth the same.

30 175. At all times material, Defendants qualified as a provider of information to the Credit Reporting

31 Agencies, including but not limited to Experian, Equifax, and TransUnion, under the Federal

32 Fair Credit Reporting Act.

176. Defendants wrongfully, improperly, and illegally reported negative information as to the Plaintiffs to one or more Credit Reporting Agencies, resulting in Plaintiffs having negative information on their credit reports and the lowering of their FICO scores.

177. Pursuant to 15 USC sec. 1681(s)(2)(b), Plaintiffs are entitled to maintain a private cause of action against Defendants for an award of damages in an amount to be proven at the time of trail for all violations of the Fair Credit Reporting Act which caused actual damages to Plaintiff, including emotional distress and humiliation.

178. Plaintiffs are entitled to recover damages from Defendants for negligent non-compliance with the Fair Credit Reporting pursuant to 15 USC sec. 1681(o).

179. Plaintiffs are also entitled to recover damages from Defendants for the willful non-compliance with the Fair Credit Reporting pursuant to 15 USC sec. 1681(n)(a)(2) in an amount to be proven at time of trial.

180. As a direct result of the Defendants' actions Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT V: FRAUDULENT MISREPRESENTATION

181. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-180 inclusive as if set forth the same.

182. Plaintiff alleges that the Defendants knowingly and intentionally concealed material information from Plaintiffs which is required by Federal Statutes and Regulations to be disclosed to the Plaintiffs both before and at the closing.

183. Plaintiff alleges that the Defendants misrepresented material information to the Plaintiffs with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

184. Plaintiff alleges that the Defendants, under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

185. Plaintiff relied upon the representations of the Defendants in agreeing to execute the mortgage loan documents.

186. Had Plaintiff known of the falsity of Defendants representations, Plaintiff would not have entered into the transactions the subject of this action.

187. As a direct result of the Defendants' actions Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT VI: BREACH OF FIDUCIARY DUTY

188. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-187 inclusive as if set forth the same.

189. Plaintiff alleges that the Defendants, by their actions in contracting to provide mortgage loan services and a loan program to Plaintiffs which was not only to be best suited to the Plaintiffs given their income and expenses but by which Plaintiffs would also be able to satisfy their obligations without risk of losing their home, were "fiduciaries" in which Plaintiffs reposed trust and confidence, especially given that Plaintiffs were not and are not investment bankers, securities dealers, mortgage lenders, or mortgage brokers.

190. Plaintiff alleges that the Defendants breached their fiduciary duties to the Plaintiffs by fraudulently inducing Plaintiffs to enter into a mortgage transaction which was contrary to Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of their home.

191. Under the totality of the circumstances, the Defendants' actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiffs justifying an award of not only actually compensatory damages but also exemplary punitive damages to serve as a deterrent not only as to future conduct of the name Defendants herein, but also to other persons or entities with similar inclinations. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT VII: UNJUST ENRICHMENT

192. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-191 inclusive as if set forth the same.

193. Plaintiff alleges that the Defendants had an implied contract with the plaintiffs to ensure that Plaintiffs understood all fees which would be paid to the Defendants to obtain credit on Plaintiffs' behalf and to not charge any fees which were not related to the settlement of the loan and without full disclosure to Plaintiffs.

194. Plaintiff alleges that the Defendants had full knowledge that a "bait and switch" adjustable rate predatory mortgage with an increase in the interest rate due to the YSP paid to the Broker for the "up sell" was not in the Plaintiffs' best interest.

195. Plaintiff alleges that the Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits and gains and YSP fee unrelated to the settlement services provided at closing.

196. Defendants have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principle of equity.

197. Plaintiff thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

### COUNT VIII: CIVIL CONSPIRACY CLAIM 1

198. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-197 inclusive as if set forth the same.

199. In connection with the application for and consummation of the mortgage loan the subject of this action, and in connection with the trustee sale subject to this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act but unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiffs.

200. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purposes of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

201. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

202. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT IV: CIVIL CONSPIRACY CLAIM 2

203. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-202 inclusive as if set forth the same.

204. Plaintiff alleges that the Defendants conspired together to create a false paper trail in an attempt to fraudulently foreclose on Plaintiff's property.

205. Plaintiff alleges that the Defendants conspired together to create false chains of title and assignments that they know were not correctly done.

206. Plaintiff alleges that "BAC" owning and operating of "RECONTRUST" and that the sharing of employees that sign and notarize thousands of documents daily void of proper due diligence is a conflict of interest and a monopoly created for the purpose of circumventing the true nature of Trustee rights and responsibilities.

207. Plaintiff alleges that the vast evidence of numerous versions of Defendants' signatures on publicly recorded documents and violations in Notary regulations constitutes a "Foreclosure Mill" approach to signing and notarizing of documents.

208.  As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT X: SET ASIDE ILLEGAL TRUSTEE SALE

209. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-208 inclusive as if set forth the same.

210. Defendants lacked standing to bring about foreclosure proceedings on plaintiff's home because none of them were the holder in due course of Plaintiff's original promissory note at that the time they commenced foreclosure proceedings.

211. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**COUNT XI: QUIET TITLE**

212. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-211 inclusive as if set forth the same.

213. The property that is the subject of this action is located at 25225 Cultus Lane. Bend, Oregon 97701.

214. Plaintiff is and at all times herein mentioned was the owner and/or entitled to possession of the property located at 25225 Cultus Lane. Bend, Oregon 97701..

215. Plaintiff is informed and believes and thereupon alleges that Defendants claims an interest in the property adverse to the plaintiff herein. However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property.

216. Plaintiff therefore seeks a declaration that the title to the subject property is vested in plaintiff alone and that the defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to plaintiff herein.

217. WHEREFORE, plaintiff prays for judgment against defendants and each of them as follows:

    A)   For an order compelling said Defendant, and each of them, to transfer legal title and possession of the subject property to Plaintiff herein.

    B)   For a declaration and determination that Plaintiff is the rightful owner of title to the property and that Defendants herein, and each of them, be declared to have not estate, right, title or interest in said property.

    C)   For a judgment forever enjoining said Defendants, and each of them, from claiming any estate, right, title or interest in said property.

    D)   For costs of suit herein incurred.

**COUNT XII: USURY**

218. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-217 inclusive as if set forth the same.

219. The real APR was not disclosed.

220. The interest charged was greater than state law permitted. In regard to usury, a loan to be used primarily for home improvement or home purchase is not regarded as a loan for personal, family or household purposes. With these loans and for any other loans which are not for personal, family or household purposes, the allowable rate is the higher of 10% or 5% over the amount charged by the Federal Reserve Bank of San Francisco on advances to member banks on the 25th day of the month before the loan (if the agreement to loan and the actual lending of the money are in different months, the 25th day of the month before the earlier event is used).

221. The pattern of cheating the state out of the revenues for registration and evading the taxes and revenues to the state by not recording the alleged "assignments" of the loans despite state law to the contrary, demonstrates that the fraudulent scheme of tricking borrowers into signing papers they would have signed if they were aware of the true facts so that their identities could be stolen and used to sell unregulated and fraudulent securities, such that the borrowers and the state were victims of the fraud.

222. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT XIII: PREDATORY LENDING

223. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-222 inclusive as if set forth the same.

224. Plaintiff alleges that "SUMMIT" has engaged in predatory lending practices with respect to Plaintiff, the specifics of which are unknown, but which are subject to discovery and with respect to which the specifics will be alleged by amendment to this complaint when ascertained.

225. One or more of the predatory lending practices referred to in the previous paragraph permits, under the law, on or more defenses or remedies, the specifics of which will be alleged by amend to this complaint when ascertained.

## COUNT XIV: UNFAIR DEBT COLLECTION PRACTICES

226. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-225 inclusive as if set forth the same.

227. Plaintiff is informed and believes and thereupon alleges that the Defendants and each of them, in taking the actions aforementioned, have violated provisions the Federal Fair Debt Collection Act, 15 U.S.C., Title 41, Subchap. V, §§ 1692 et seq, and the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. §§ 2601-2617.

228. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT XV: SLANDER OF TITLE

229. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-228 inclusive as if set forth the same.

230. Plaintiff is informed and believes and thereupon alleges that the Defendants and each of them, in taking the actions aforementioned, have a made a false and malicious written or spoken public statement disparaging a his title to property that causes harm for which special damages may be awarded slander of title —M & P Concrete Prods. v. Woods, 590 So. Second 429 (1991) [called also defamation of title disparagement of property disparagement of title]

## COUNT XVI: FRAUDULENT FORCLOSURE

231. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-230 inclusive as if set forth the same.

232. Plaintiff alleges that the Defendants' have without correct authority and assignment have recorded a "Notice of Default and Election to Sell", showing their intent in committing a fraudulent foreclosure.

233. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**COUNT XVII: REFUSAL OF PAYMENT**

234. Plaintiff realleges and restates the foregoing jurisdictional allegations and factual allegations and refers to 1-233 inclusive as if set forth the same.

235. Plaintiff alleges that "BAC" refusal of tender of payments is a violation of UCC law and that the Plaintiff is entitled to relief in an amount equal to the tendered payment.

236. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches for the fiduciary duties, Plaintiffs have suffered damages. WHEREFORE Plaintiffs demand judgment against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**RELIEF SOUGHT**

237. WHEREFORE, having set forth numerous legally sufficient causes of actions against the Defendants, Plaintiffs prays that:

a.      Defendants BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 and each of them, be required to deed back to the Plaintiff the subject real property;

b.      Defendants BAC HOME LOANS SERVICING LP; RECONTRUST NA, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., THE BANK OF NEW YORK MELLON CORPORATION; CHRISTINA BALANDRAN; DIANE L. BOLTON; DANIEL B. RODRIGUEZ; JONATHAN JACKSON; E.L. HOWARD; LUCY MANSOURIAN; PETER LOPEZ; STACEY L. BLOUIN; JANINE R. WRIGHT KARLA MERIDA; SUMMIT MORTGAGE and DOES 1-50 and each of them, be permanently enjoined from any and all further attempts to foreclose on the subject real property unless and until it can be present proof that it is entitled, under the law of negotiable instruments in force in California, to enforce the underlying promissory note described in the security instrument, if any ever existed, identified in the Deed of Trust dated October 23, 2006;

c.      The Plaintiff's be award monetary damages against the Defendants, and each of them, jointly and severally, that Plaintiff incurred due to the need to bring this action for injunctive relief according to proof;

d. That Plaintiff be awarded statutory damages for Unfair Debt Collection practices and the federal and California statutes;

e. That Plaintiff be awarded treble damages as permitted by law;

f. That prejudgment interest be awarded Plaintiff as permitted by law;

g. Entry of a Final Judgment against all Defendants jointly and severally in an amount not yet quantified but to be proven at trial and such other amounts to proven at trial

h. The Court find that the transactions the subject of this action are illegal and are deemed void;

i. That the foreclosure which was instituted be deemed and declared illegal and void and the further proceedings in connection with the foreclosure be enjoined

j. To set aside the illegal trustee sale;

k. To quiet title;

l. For compensatory and general damages according to proof;

m. For interest at the prevailing legal rate of interest accrued on any damages awarded to the extent permissible under the law;

n. For exemplary and punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

o. For the right to account;

p. That attorneys fees be awarded as permitted by law;

q. For costs of suit incurred; and

r. For corrective actions to restore plaintiff's credit rating at all agencies & his FICO score to prior to the loan.   These corrective actions to be performed by the defendants with confirmation & proof provided to the plaintiff.

s. For compensatory and general damages as provided by RESPA 12 U.S.C. Section 2605(e)

t. For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

SCOTT MCDANIEL
25225 CULTUS LANE
BEND, OR 97701
Attorney pro se
Mcdaniel.cultus@gmail.com
541-323-1799  Tel.

# EXHIBIT # 1

Loan Number 2230061041360

# InterestFirst℠ ADJUSTABLE RATE NOTE

**(Six-Month LIBOR Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| OCTOBER 17 , 2006 | BEND | OREGON |
|---|---|---|
| | [City] | [State] |

**25225 CULTUS LANE, BEND, OREGON 97701**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$255,000.00** (this amount is called "Principal"), plus interest, to the order of Lender. Lender is **Decision One Mortgage Company, LLC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.99%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on **DECEMBER 1, 2006**. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **NOVEMBER 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3023 HSBC Way, Fort Mill, South Carolina 29715** or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. **$1,272.88** before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **NOVEMBER, 2008**, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **FOUR AND 99/100THS** percentage points (**4.99%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **8.99%** or less than **5.99%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) (**1%**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **11.99%** or less than **5.99%**.

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE–SIX-MONTH LIBOR INDEX–Single Family

*(page 1 of 3 pages)*



**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G)  Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after **NOVEMBER 1, 2011.**

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0 %** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**NOTICE TO THE BORROWER**

**Do not sign this Note before you read it.**
**This Note provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note. [Or Rev Stat Section 82.160; Or Admin R 441-870-040.]**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**SCOTT MCDANIEL**                          -Borrower

_____ (Seal)
**LEAH MCDANIEL**                           -Borrower

_____ (Seal)
                                            -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE                            *[Sign Original Only]*

DECISION ONE MORTGAGE COMPANY, LLC

BY:_____



# EXHIBIT # 2

↓ 120655 48

DESCHUTES COUNTY OFFICIAL RECORDS
NANCY BLANKENSHIP, COUNTY CLERK          2009-54494

                                                         $48.00

0070625220090054490010018
                                        12/28/2009 04:09:57 PM

M-DTAS  Cnt=1  Stn=1  BN
$5.00 $11.00 $16.00 $10.00 $6.00

AFTER RECORDING RETURN TO:

**Foreclosure Department**
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 09 -0182879

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC11, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 10/17/2006, executed by SCOTT MCDANIEL AND LEAH MCDANIEL, AS TENANTS BY THE ENTIRETY, Grantor(s), to PACIFIC NORTHWEST TITLE INS. CO., Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded on 10/27/2006 as Recorder's fee/file/instrument/microfilm/reception number 2006-71660, Records of Deschutes County, Oregon, describing land. There in: as more fully described in said Deed of Trust.

Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated ___12 | 23___ , 20 _09_ .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of ___CALIFORNIA___ )

By: _____

County of ___VENTURA___ ) ss

**CHRISTINA BALANDRAN** , Assistant Secretary

On ___12 23 09___ , before me, ___DIANE BOLTON___ , notary public, personally appeared ___CHRISTINA BALANDRAN___ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public in and for the State of CALIFORNIA
Residing at ___VENTURA___
My Commission Expires: _____

DIANE BOLTON
Commission # 1713029
Notary Public - California
Los Angeles County
My Comm. Expires Dec 29, 2010

After recording, return to
Amerititle
15 OREGON AVENUE, BEND

*ORASGN (01/08)*

# EXHIBIT # 3

DESCHUTES COUNTY OFFICIAL RECORDS    2009-54495
NANCY BLANKENSHIP, COUNTY CLERK

$48.00

00708254200900544950020020
                                    12/28/2009 04:09:57 PM
M-RST  Cnt=1  Stn=1  BN
$5.00 $11.00 $16.00 $10.00 $8.00

Do not remove this page from original document.

# Deschutes County Clerk

# Certificate Page



If this instrument is being re-recorded, please complete the following statement, in accordance with ORS 205.244:

Re-recorded to correct [give reason] _____
previously recorded in Book _____ and Page _____,
or as Fee Number _____.

↓ 120655  48⁻

## APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS, that Scott Mcdaniel And Leah Mcdaniel, As Tenants By The Entirety, as grantor(s), and Pacific Northwest Title Ins. Co., as the Trustee, and Mortgage Electronic Registration Systems, Inc., is the Beneficiary under that certain Trust Deed dated 10/17/2006, and recorded 10/27/2006, as Recorder's fee/file/instrument/microfilm/reception No. 2006-71660 of the Mortgage Records of Deschutes County, Oregon. The undersigned, who is the present Beneficiary under said Trust Deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints RECONTRUST COMPANY, N.A., whose address is 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063 as successor trustee under said Trust Deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned Beneficiary has executed this document. If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

DATED: __12|23__, 2009.

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC11

By _____
Name: _____
Title: **CHRISTINA BALANDRAN**

STATE OF __CALIFORNIA__ )
County of __VENTURA__ ) ss.

On __12|23|09__, before me, **DIANE BOLTON** _____, personally appeared __CHRISTINA BALANDRAN__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for __CALIFORNIA__          (SEAL)
My commission expires: _____

APPOINTMENT OF SUCCESSOR TRUSTEE
RE: Trust Deed from
SCOTT MCDANIEL and LEAH MCDANIEL
            Grantor
        To
RECONTRUST COMPANY, N.A.
        Trustee TS No. 09 -0182879

**DIANE BOLTON**
Commission # 1713029
Notary Public - California
Los Angeles County
My Comm. Expires Dec 29, 2010

After recording return to:
**RECONTRUST COMPANY, N.A.**
**C/O RECONTRUST COMPANY, N.A.**
**400 COUNTRYWIDE WAY  SV-35**

After recording, return to
Amerititle
15 OREGON AVENUE, BEND

*ORAPTOFSUC (07/07)*

# EXHIBIT # 4

2 120655 53

DESCHUTES COUNTY OFFICIAL RECORDS
NANCY BLANKENSHIP, COUNTY CLERK    **2009-54496**

|||||||||||||||||||||||||||||||||||||||    **$53.00**
00706255200900054496020027

**12/28/2009 04:09:57 PM**

M-DEF  Cnt=1  Stn=1  BN
$10.00  $11.00  $16.00  $10.00  $6.00

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by SCOTT MCDANIEL AND LEAH MCDANIEL, AS TENANTS BY THE ENTIRETY, as grantors, to PACIFIC NORTHWEST TITLE INS. CO., as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, dated 10/17/2006, recorded 10/27/2006, in the mortgage records of Deschutes County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 2006-71660, covering the following described real property situated in said county and state, to wit:

LOT SIXTY IN UNIT THREE OF BEND CASCADE VIEW ESTATES, TRACT TWO, DESCHUTES COUNTY, OREGON.

PROPERTY ADDRESS:  25225 CULTUS LANE

BEND, OR 97701

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $1,825.73 beginning 09/01/2009; plus late charges of $ 74.38 each month beginning 09/01/2009 payment plus prior accrued late charges of $-223.14; plus advances of $120.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $255,000.00 with interest thereon at the rate of 7 percent per annum beginning 08/01/2009 plus late charges of $ 74.38 each month beginning 09/01/2009 until paid; plus prior accrued late charges of $-223.14; plus advances of $120.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| | |
|---|---|
| **NOTICE OF DEFAULT AND ELECTION TO SELL**<br>RE: Trust Deed from<br>SCOTT MCDANIEL and LEAH MCDANIEL,<br>Grantor<br>To<br>RECONTRUST COMPANY, N.A.,<br>Trustee          TS No. 09 -0182879 | For Additional Information:<br>Please Contact<br>Foreclosure Department<br>RECONTRUST COMPANY, N.A.<br>RECONTRUST COMPANY, N.A.<br>1800 Tapo Canyon Rd., CA6-914-01-94<br>SIMI VALLEY, CA 93063<br>(800)-281-8219 |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

*ORNOD (07/07)*

After recording, return to
Amerititle
15 OREGON AVENUE, BEND

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Friday, May 07, 2010, at the following place: inside the main lobby of the Deschutes County Courthouse, 1164 NW Bond, in the city of Bend, County of Deschutes, State of Oregon, which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.

DANIEL RODRIGUEZ, Team Member

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF VENTURA            )

DIANE BOLTON

On __12/23/09__, before me, _____, notary public, personally appeared __Daniel B. Rodriguez__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public for    CALIFORNIA
My commission expires: _____

(SEAL)

DIANE BOLTON
Commission # 1713029
Notary Public - California
Los Angeles County
My Comm. Expires Dec 29, 2010

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.**

*ORNOD (07/07)*

# EXHIBIT # 5

SCOTT MCDANIEL and LEAH MCDANIEL
25225 CULTUS LANE
BEND, OR 97701

BANK OF AMERICA HOME LOANS, Barbara J. Desoer and Kenneth D. Lewis
450 AMERICAN STREET
SIMI VALLEY, CA 93065-6285

BAC HOME LOANS SERVICING, L.P., Barbara J. Desoer
450 AMERICAN STREET
SIMI VALLEY, CA 93065-6285

RECONTRUST COMPANY, N.A. Deanna Burns and Lucy Mansouian
1800 TAPO CANYON RD., CA6-914-01-94
SIMI VALLEY, CA 93063

Certified Mail # 7009 1410 0000 6446 0741 Date: February 2, 2010
Certified Mail # 7009 1410 0000 6446 0758 Date: February 2, 2010
Certified Mail # 7009 1410 0000 6446 0765 Date: February 2, 2010
Certified Mail # 7009 1410 0000 6446 0772 Date: February 2, 2010
Certified Mail # 7009 1410 0000 6446 0789 Date: February 2, 2010

## QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST

**This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).**

Reference: Account # 154164052-8 (hereinafter the subject loan and is the reference for all questions and requests described below).

Dear Sir or Madam:

I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute 1st hand evidence from you of the original uncertificated or certificated security regarding account # 154164052-8. In the event you do not supply me with the very

security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:
Increased the amounts of monthly payments;
Increased the principal balance I owe;
Increased the escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward the principal on this account; and/or
Assessed, charged and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I request you insure that I have not been the victim of such predatory servicing and lending practices.

To insure this, I have authorized a thorough review, examination, accounting and audit of mortgage account 154164052-8 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within **sixty (60) business** days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by me and others to ensure that this loan:

1) Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2) That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3) That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4) That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5) That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6) That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7) That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8) That interest and principal have been properly calculated and applied to this loan;

9) That any principal balance has been properly calculated, amortized and accounted for;

10) That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account 154164052-8:

1- Any certificated or uncertificated security used for the funding of this account;

2- Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3- Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

4- Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5- Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6- Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7- Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8- Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9- Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10- Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11- Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12- Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13- Any Trustee agreement(s) between  the nominal lender at the loan closing and any party
or parties who could claim an interest in the loan closing or documents pertaining thereto
and trustee(s) regarding this account or pool accounts with any GSE or other party;

**Please also send me copies, front and back, of:**

1- Any documentation evidencing any trust relationship regarding the Mortgage/Deed of
Trust **and** any Note in this matter;

2- Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of
Trust **and** any Note;

3- Any and all document(s) establishing the date of any appointment of Trustee
Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or
nominees of any substitute trustees(s);

4- Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and**
any Note;

5- Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and**
any Note;

6- Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust
**and** any Note;

7- Any documentation evidencing the Mortgage/Deed of Trust is **not** a constructive trust or
any other form of trust;

8- All data, information, notations, text, figures and information contained in your mortgage
servicing and accounting computer systems including, but not limited to Alltel or Fidelity
CPI system, or any other similar mortgage servicing software used by you, any servicers,
or sub-servicers of this mortgage account from the inception of this account to the date
written above.

9- All descriptions and legends of all Codes used in your mortgage servicing and accounting
system so the examiners and auditors and experts retained to audit and review this
mortgage account may properly conduct their work.

10- All assignments, transfers, allonges, or other documents evidencing a transfer, sale or
assignment of this mortgage, deed of trust, monetary instrument or other document that
secures payment by me to this obligation in this account from the inception of this
account to the present date including any such assignment on MERS.

11- All records, electronic or otherwise, of assignments of this mortgage, monetary
instrument or servicing rights to this mortgage including any such assignments on MERS.

12- All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust
from the inception of this account to the present date.

13- The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

14- All escrow analyses conducted on this account from the inception of this account until the date of this letter.

15- The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

16- Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

17- All letters, statements and documents sent to me by your company.

18- All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

19- All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

20- All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

21- All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

22- All copies of property inspection reports, appraisals, BPOs and reports done on my property.

23- All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

24- All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

25- All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

26- All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

27- All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

## In regards to Account Accounting and Servicing Systems:

1- Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2- For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company that designed and sold the system.

3- For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## In regards to Debits and Credits:

1- In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

2- In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3- For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4- For each transaction code, please provide the master transaction code list used by you or previous servicers.

## In regards to Mortgage and Assignments:

1- Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2- If not, why?

3- Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4- Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5- If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**In regards to Attorney Fees:**

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1- Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

2- If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3- Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4- If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5- Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6- If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7- Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8- Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of attorney fees.

9- Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10- Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11- Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12- Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13- Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14- Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

15- How much total in attorney fees have been assessed to this account from the inception to the present date?

16- How much total in attorney fees have been collected from this account from the inception to the present date?

17- How much total in attorney fees have been charged to this account from the inception to the present date?

18- Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

**In regards to Suspense/Unapplied Accounts:**

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1- Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2- If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3- In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

**In regards to late fees:**

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1- Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2- Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

3- Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4- Are late fees considered interest? Yes or No?

5- Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6- Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7- If yes, please describe what expenses or damages were charged or assessed to this account.

8- Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

9- Please describe for me in writing what damages you or others undertook due to any payment I made, which was late.

10- Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of late fees.

11- Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12- Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13- Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14- Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15- Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

16- Have any late charges been assessed to this account? Yes or No?

17- If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18- Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim I have been late with a payment from the inception of this account to the present date.

19- Have late charges been collected on this account from the inception of this account to the present date? Yes or No?

20- If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

**In regards to Property Inspections:**

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1- Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3- If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell me the price charged for each property inspection.

5- Please tell me the date of each property inspection.

6- Please tell me the name and address of each company and person who conducted each property inspection on my property.

7- Please tell me why property inspections were conducted on my property.

8- Please tell me how property inspections are beneficial to me.

9- Please tell me how property inspections are protective of my property.

10- Please explain to me your policy on property inspections.

11- Do you consider the payment of inspection fees as a cost of collection? Yes or No?

12- If yes, why?

13- Do you use property inspections to collect debts? Yes or No?

14- Have you used any portion of the property inspection process on my property to collect a debt or inform me of a debt, payment or obligation I owe? Yes or No?

15- If yes, please answer when and why?

16- Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees.

17- Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

18- If yes, why?

19- Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

20- If yes, why?

21- Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22- Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23- Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment?

24- Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

25- Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26- If yes, when and how much was charged?

27- Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28- How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29- How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30- Please forward to me copies of all property inspections made on my property in this mortgage account file.

31- Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1- Have any BPOs (Broker Price Opinions) been conducted on my property? Yes or No?

2- If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3- If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4- Please tell me the price of each BPO.

5- Please tell me who conducted the BPO.

6- Please tell me why BPOs were conducted on my property.

7- Please tell me how BPOs are beneficial to me.

8- Please tell me how BPOs are protective of my property.

9- Please explain your policy on BPOs.

10- Have any BPO fees been assessed to this account? Yes or No?

11- If yes, how much in total BPO fees have been charged to this account?

12- Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of a BPO fee from me.

13- Please send to me copies of all BPO reports that have been done on my property.

14- Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

**In regards to Force-Placed Insurance:**

1- Have you placed or ordered any force-placed insurance policies on my property?

2- If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3- Please tell me the price of each policy.

4- Please tell me the agent for each policy.

5- Please tell me why each policy was placed on my property.

6- Please tell me how the policies are beneficial to me.

7- Please tell me how the policies are protective of my property.

8- Please explain to me your policy on force-placed insurance.

9- Have any force-placed insurance fees been assessed to this account? Yes or No?

10- If yes, how much in total force-placed insurance fees have been assessed to this account?

11- Have any force-placed insurance fees been charged to this account? Yes or No?

12- If yes, how much in total force-placed insurance fees have been charged to this account?

13- Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment, charge or collection of force-placed insurance fees from me.

14- Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15- Do you have any relationship with the carrier that issued any policies on my property? If yes, please describe.

16- Has the agency or carrier you used to place a forced-placed insurance on my property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17- Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18- Please send to me copies of all forced-placed insurance policies that have been ordered on my property from the inception of this account to the present date.

**In regards to Servicing**:

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1- Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2- Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

3- Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.

4- Where is the original monetary instrument or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

5- Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6- Since the inception of this account, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

7- Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8- Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

9- Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

10- Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

11- Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

12- Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

13- Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

14- Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, allonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

15- Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16- How much was paid for this individual mortgage account by you?

17- If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

18- If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

19- Who did you issue a check or payment to for this mortgage loan?

20- Please provide me with copies of the front and back of the canceled check.

21- Did any investor approve of the foreclosure of my property? Yes or No?

22- Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

23- Provide any and all due diligence reports by a separate due diligence firm in regards to any pooling agreements that have been generated.

24- Please identify all persons who approved the foreclosure of my property.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal regulators; and other consumer advocates; and my congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

BANK OF AMERICA HOME LOANS and/or BAC HOME LOANS SERVICING, L.P. or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in SCOTT MCDANIEL and LEAH MCDANIEL or any property or collateral connected to SCOTT MCDANIEL and LEAH MCDANIEL or account 154164052-8 and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1- SCOTT MCDANIEL and LEAH MCDANIEL's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all

power of attorney or appointment BANK OF AMERICA HOME LOANS and /or BAC HOME LOANS SERVICING, L.P. may have or may have had in connection with account 154164052-8 and any property and/or real estate connected with account 154164052-8.

2- SCOTT MCDANIEL and LEAH MCDANIEL's right to have any certificated or uncertificated security re-registered in SCOTT MCDANIEL and LEAH MCDANIEL's, and only SCOTT MCDANIEL and LEAH MCDANIEL's name.

3- SCOTT MCDANIEL and LEAH MCDANIEL's right of collection via BANK OF AMERICA HOME LOANS's and/or BAC HOME LOANS SERVICING, L.P.'s liability insurance and/or bond.

4- SCOTT MCDANIEL and LEAH MCDANIEL's entitlement in filing and executing any instruments, as power of attorney for and by BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P., including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. is located.

5- SCOTT MCDANIEL and LEAH MCDANIEL's right to damages because of BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P.'s wrongful registration, breach of intermediary responsibility with regard to SCOTT MCDANIEL and LEAH MCDANIEL's asset by BANK OF AMERICA HOME LOANS issuing to SCOTT MCDANIEL and LEAH MCDANIEL a certified check for the original value of SCOTT MCDANIEL and LEAH MCDANIEL's monetary instrument.

6- SCOTT MCDANIEL and LEAH MCDANIEL's right to have account 154164052-8 completely set off because BANK OF AMERICA HOME LOANS's / BAC HOME LOANS SERVICING, L.P.'s wrongful registration, breach of intermediary responsibility with regard to SCOTT MCDANIEL and LEAH MCDANIEL's monetary instrument/asset by BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. sending confirmation of set off of wrongful liability of SCOTT MCDANIEL and LEAH MCDANIEL and issuing a certified check for the difference between the original value of SCOTT MCDANIEL and LEAH MCDANIEL's monetary instrument/asset and what SCOTT MCDANIEL and LEAH MCDANIEL mistakenly sent to BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P.as a payment for such wrongful liability.

BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. in accordance with BANK OF AMERICA HOME LOANS's Articles of Incorporation, By Laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as BANK OF AMERICA HOME LOANS's / BAC

HOME LOANS SERVICING, L.P.'s judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. fails by not rebutting to any part of this RESPA REQUEST BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. agrees with the granting unto SCOTT MCDANIEL and LEAH MCDANIEL's unlimited Power of Attorney and any and all full authorization in signing and endorsing BANK OF AMERICA HOME LOANS's / BAC HOME LOANS SERVICING, L.P. names upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P. waives any and all claims of BANK OF AMERICA HOME LOANS / BAC HOME LOANS SERVICING, L.P., and/or defenses and remains in effect until the satisfaction of all obligations by BANK OF AMERICA HOME LOANS have been satisfied.

Sincerely,

PRIMARY OWNER(S) NAME(S)(CAPS)

x_____   _____, 20____

x_____   _____, 20____

**NOTARY WITNESS AND SEAL**

State of _____   County of _____

**Subscribed and sworn to** (or affirmed) before me on this ____ day of _____, 20_____, by

_____, proved to me on the basis of satisfactory evidence to be the

person(s) who appeared before me.

Signature_____ (seal)

Commission expires _____,

# EXHIBIT # 6

 **UNITED STATES POSTAL SERVICE®**

Home | Help |
Sign In

Track & Confirm     FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: **7009 1410 0000 6446 0789**
Status: **Delivered**

Your item was delivered at 9:31 am on February 08, 2010 in SIMI
VALLEY, CA 93065. A proof of delivery record may be available through
your local Post Office for a fee.

Additional information for this item is stored in files offline.

**Restore Offline Details >**     : **Return to USPS.com Home >**

---

**Track & Confirm**

Enter Label/Receipt Number.

Go >

---

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA

---

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ $1.39 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.19 |

02/02/2010

Sent To: BAC Home Loans Servicing LP
Street, Apt. No.; or PO Box No. 450 American Street
City, State, ZIP+4 Simi Valley, CA 93065 - 6285

7009 1410 0000 6446 0789

PS Form 3800, August 2006       See Reverse for Instructions