FILED'11 MAR 31 15:45USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SCOTT A. MCDANIEL,                    )   CASE NO. 10-6143-HO
                                      )
         Plaintiff,                   )   ORDER
                                      )
     vs.                              )
                                      )
BAC HOME LOANS SERVICING, LP;         )
RECONTRUST COMPANY NA; MORTGAGE       )
ELECTRONIC REGISTRATION SYSTEM, INC.; )
THE BANK OF NEW YORK MELLON CORP.;    )
CHRISTINA BALANDRAN; DIANE BOLTON;    )
DANIEL B. RODRIGUEZ; JONATHAN JACKSON;)
E.L. HOWARD; LUCY MANSOURIAN; PETER   )
LOPEZ;STACEY L. BLOUIN; JANINE R.     )
WRIGHT; KARLA MERIDA; SUMMIT MORTGAGE )
CORP; and DOES 1-50,                  )
                                      )
         Defendants.                  )
_____)

Introduction

Defendants[1] BAC Home Loans Servicing, LP (BAC); ReconTrust

---

[1] Defendants in plaintiff's First Amended Complaint include: the previously named defendants BAC; ReconTrust; and MERS as well as newly named Bank of New York Mellon Corp (BNYMellon); (ten employees of ReconTrust),Christina Balandran; Diane Bolton; Daniel Rodriguez; Jonathan Jackson; E.L. Howard;

(continued...)

Company N.A. (ReconTrust); Mortgage Electronic Registration System, Inc., (MERS); and Bank of New York Mellon (BNYMellon); move to dismiss *pro se* plaintiff, Scott McDaniel's First Amended Complaint. [#40; #48].

Plaintiff alleges seventeen causes of action against all defendants and seeks damages and injunctive relief. [#40-¶¶ 234-237].

## Background

The property at issue is plaintiff's residence located at 25225 Cultus Lane, Bend Oregon, 97701. [#40-¶ 6, Ex.1]. Decision One Mortgage Company originated plaintiff's mortgage loan on October 17, 2006. [#40-Ex.1; #40-¶¶ 27-29; #49-p.10]. BAC Home Loans was the loan servicer. [#40-¶¶ 38-43; #49-p.11]. The Trust Deed names MERS as the beneficiary of the loan under the security instrument. Id. The loan is currently owned by The Bank of New York Mellon(BNYMellon)[2] and BAC and ReconTrust[3] who, plaintiff asserts "lack[] or lacked standing to initiate a foreclosure proceeding against the subject property." [#40-¶ 122].

---

[1](...continued)
Lucy Mansourian; Peter Lopez; Stacey Blouin; Janine Wright; Karla Merida; Summit Mortgage Corp. (Summit) and Does 1-50.

[2]  Defendants agree that in 2009, BNYMellon was assigned the Deed of Trust. [#49-p.11].

[3]  ReconTrust is the successor trustee that initiated foreclosure proceedings. [#40-¶ 50; #49-p.11].

2 - ORDER

Plaintiff admits that he fell behind on his loan payments in April of 2009. [#40-¶ 37]. Plaintiff alleges that in September 2009, he offered BAC Home Loans a partial mortgage payment of $1,825.73 which BAC refused, instead requiring that plaintiff pay the full amount due of current and past due amounts. [#40-¶ 38].

On December 31, 2009, ReconTrust served plaintiff with a Trustee Notice of Sale[4] which demanded full payment of the loan amount of $255,000.00 together with 7% interest calculated from August 1, 2009 and all accrued late charges, fees and costs.[#40-¶ 53; #40-Ex.2,p.1]. In response, plaintiff sent what he termed a Qualified Written Request[5] (QWR), on February 2, 2010. [[#40-¶ 61; #49-p.9]. Plaintiff asserts that defendants did not lawfully comply with the request because BAC Home Loans "attempted to obscure the true holder of the note and obstruct the investigation of the chain of title." [#40-¶ 70].

Defendant BAC contends that they provided all required and/or requested materials including his loan application, appraisal report, good faith estimate, deed of trust, fixed/adjustable rate rider, truth in lending disclosure

---

[4] Despite a May 7, 2010 foreclosure date [#40-Ex.4-p.2],on the Notice of Default and Election to Sell, it does not appear that the subject property has been sold at a foreclosure sale.

[5] Which although it was an improper request, BAC Home Loans indicated they would treat as a request pursuant to the RESPA. [#49-p.9].

3 - ORDER

statement, HUD-1 settlement statement and payment history detailing transactions during BAC's loan servicing. [#49-p.9].

On March 4, 2010, plaintiff alleges that he deposited[6] $275,000.00 with "Notary Witness Cynthia Homer," who "was instructed to deliver Notice of Tender of Payment to BAC and exchange said funds for the Original Promissory Note that the Lenders/Agents allege to hold as collateral for Loan Number 154164052-8 . . . ." [#40-¶ 90]. She sent the Note of Tender to BAC Home Loans on March 4, 2009. [#40-¶ 91]. Plaintiff asserts that defendants failed to collect the funds, because they are not in possession of the "Note" and thus have no right to foreclose. [#40-¶¶ 107-108].

## Discussion

### 1.   Standard:

A Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) is proper only where there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Balisteri v. Pacific Police Dept.*, 901 F.2d 696,699 (9th

---

[6] It's not entirely clear what plaintiff deposited with Ms. Homer. Defendants assert that rather than depositing $275,000 in some sort of negotiable form with the notary, plaintiff instead deposited a document he had drawn up labeled "Notice of Tender of Payment" and "Notice of Public Policy" which stated *inter alia* that plaintiff was "part of the national banking association the members of which may issue negotiable instruments [which] are required by law to be accepted as "legal tender" of payment for all debts public and private . . . on the same par and category with the Federal reserve notes." [#49-p.9, citing #40-Ex. 17]. Defendants did not accept this proffer.

4 - ORDER

Cir.1990). The issue is not whether the plaintiff is likely to succeed on the merits but if the complaint is sufficient to entitle the plaintiff to proceed beyond the pleadings in an attempt to establish his claim. *De La Cruz v. Torrey*, 582 F.2d 45, 48 (9th Cir 1978).

A plaintiffs' material allegations must be accepted as true and the complaint construed in the light most favorable to him. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988). Additionally, *pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, a court's liberal interpretation of a *pro se* litigant's pleadings may not supply essential elements of a claim that are not pleaded. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Thus the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Sitanggang v. Indymac Bank FSB*, 2009 WL 1286484,p.2 (citing *Farm Credit Service v. Am. State Bank*, 339 F.3d 765, 767 (8th Cir. 2003).

Similarly, conclusory allegation without more are insufficient to defeat a motion to dismiss for failure to state a claim. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 810 (9th Cir 1988); see also *Ashcroft v. Iqbal,* 129 S.Ct 1937, 1949 (2009)(To survive a motion to dismiss, a complaint must contain

5 - ORDER

sufficient factual matter, accepted as true, to state a claim that is plausible on its face.)(citations omitted). Thus a *pro se* litigant's claims may be dismissed when the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque,* 554 F.3d 1060, 1061 (9th Cir. 2008).

2. Defendants' Motion to Dismiss:

Defendants BAC Home Loans, ReconTrust and MERS; move to dismiss plaintiff's amended complaint with prejudice for failure to state a claim. [# 48; #49; #53].

**A) Claims 1, 10, 11, 15 and 16, alleging defendants' lack of standing:**

Plaintiff claims: (1) fraudulent assignment, [#40-¶¶ 150-159]; (10) set aside illegal trustee sale, [#40-¶¶ 209-211]; (11) quiet title, [#40-¶¶ 212-217]; (15) slander of title, and (16) fraudulent foreclosure, [#40-¶¶ 231-233]; which are all based on the premise that defendants lack standing to foreclose because assignments of the deed of trust through MERS was fraudulent for a variety of reasons. [#40]. Plaintiff does not claim that the notices given by defendants were insufficient or legally faulty or that he was not properly served with the notice on the subject properties. Plaintiff argues that "the loan was originated, funded, sold on multiple occasions" [#40-¶36], and contends that his ability to tender the debt is sufficient reason to disrupt

6 - ORDER

the non-judicial foreclosure. [#54].

Defendants respond that the Deed of Trust[7] recorded in Deschutes County as instrument 2006-71660, names Decision One as the lender and MERS as the nominee beneficiary and states plainly that MERS is a separate corporation acting solely as nominee for lender and lender's successors and assigns. [#49-p.15; see also #40 ¶¶ 29-34].

MERS then assigned the Deed to BNYMellon and recorded that assignment in Deschutes County as instrument 2009-54494. [#40-Ex.2]. BNYMellon appointed ReconTrust as successor trustee and recorded that assignment in Deschutes Court as instrument 2009-54495. [#40-Ex.3]. ReconTrust filed a Notice of Default and Election to Sell (reflecting plaintiff's default on the loan), in Deschutes County and recorded that as instrument 2009-54496.

---

[7] The Deed of Trust (of which this court previously took judicial notice), states in pertinent part:
>    MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.**
> * * * *
>    The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns).
> * * * *
>    Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, **MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender[.]**

[#17-p.12; #19-Ex.1-pp.1-3](emphasis in defendants' brief only).

7 - ORDER

[#40-Ex.4].

This court has also previously found that MERS may be designated as a beneficiary on a Deed of Trust. *Burgett v. MERS, Inc.,* USDC 09-6244-HO. Thus, plaintiff's signature on the Deed of Trust explicitly authorizes MERS to act as a beneficiary with the right to foreclose.

The Oregon Trust Deed Act does not require presentation of the note or any other proof of real party in interest or standing other than the Deed of Trust. See ORS 86.705 to 86.795. However, ORS 86.735[8] does provide that if foreclosure by sale is pursued, all prior unrecorded assignments must be filed in connection with the foreclosure. Decision One was the loan originator in this matter. Nothing in the record demonstrates that the note transfers from Decision One to subsequent lenders/loan servicers were recorded.

Because there is nothing in the record to support defendants' allegations that they have fully complied with the statutory recording requirements and are a real party in interest

---

[8] ORS § 86.735(1) specifically provides:
The trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if:
> (1) The trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated ... .

with standing to foreclose, defendants' motion to dismiss plaintiff's claims: one, for fraudulent assignment; ten, to set aside illegal trustee sale; eleven, to quiet title; and sixteen, for fraudulent foreclosure; is denied.

Plaintiff's fifteenth claim for slander of title alleges that defendants have made a false and malicious public statement disparaging his title to the property. [#40-¶¶ 229-30]. Oregon law defines the elements of slander of title as: (1) a published statement that disparages a person's title; (2) that is false; (3) that is made with malice; and (4) results in special damages. *Cawrse v. Signal Oil Co.,* 164 Or. 666, 670 (1940). Special damages in this context usually mean that the plaintiff lost a ready, willing and able buyer. *Shenefield v. Axtell,* 274 Or. 279, 282-83 (1976).

Plaintiff's claim appears to rest on his assumption that defendants do not have a right to the property, however, plaintiff does not identify any specific false statement and has freely admitted that he is delinquent on his loan. Plaintiff's assertions, standing alone as they are, are therefore insufficient to plead a slander of title claim. Accordingly, defendant's motion to dismiss plaintiff's fifteenth claim for slander of title is granted.

### B) Claim (2) for Violation of Real Estate Settlement Procedures Act (RESPA):

Plaintiff's second claim alleges that defendants' failure to provide the information requested in his "Qualified Written Request" (QWR) violated their duties under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.§ 2605. [#40-¶¶ 160-69]. Defendants respond that this claim fails because plaintiff's purported QWR was sent for an improper purpose[9] (i.e., did not relate to servicing of the loan but rather to the validity of the loan), and because plaintiff has failed to sustain (or allege) any resulting damages[10]. [#17-p.6]. Defendants also argue that plaintiff's letter did not qualify as

---

[9] A "QWR" is defined in the RESPA as:
[A] qualified written request shall be a written correspondence . . . that . . . includes, or otherwise enables a servicer to identify, the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
12 U.S.C. § 2605(e)(1)(B).
Thus if "any servicer of a federally related mortgage loan receives a qualified written request from the borrower for information *relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . . ." 12 U.S.C. § 2605(e)(1)(A) (emphasis added).

[10] Contrary to defendants assertion, section 26059f) does not require plaintiff to allege damage to establish a violation of section 2605.

10 - ORDER

a QWR, which under RESPA, must relate to the servicing[11] of such loan and to which only the servicer (BAC), is required to respond. 12 U.S.C. § 2605(e)(1)(A).

As explained above, defendants have adequately responded to plaintiff's letter giving him an explanation of why the account is correct, why certain demands were not answered, a copy of his payment history and giving him a phone number that he could use if he had additional questions. This response is consistent with 12 U.S.C. §2605. Defendants motion to dismiss plaintiff's second claim of RESPA violations is therefore granted .

### C) Claim (3) violation of Truth in Lending Act (TILA)

Plaintiff alleges that defendants have violated TILA by failing to include and disclose the finance charge and by improperly calculating the annual percentage rate. [#40-¶¶ 170-73]. Defendants argue that they were not involved with the loan origination and even if they were, plaintiff's claim is time-barred by TILA's one-year statute of limitations. [#49-p.23].

TILA has a three-year limit of rescission. 15 U.S.C.§ 1635(f). Given that plaintiff signed the loan transaction on October 23, 2006 and filed this action almost four years later on

---

[11] "Servicing," in this context, "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

11 - ORDER

July 9, 2010, plaintiff's TILA claim is time-barred. Defendant's motion to dismiss plaintiff's third claim for a TILA violation is therefore granted.

### D) **Claim (4) violation of Fair Credit Reporting Act (FCRA)**

Plaintiff claims that defendants have violated the Fair Credit Reporting Act (FCRA) by reporting negative information to one or more credit agencies which resulted in negative information on plaintiff's credit report and lowered his credit score. [#40-¶¶ 174-180]. Defendants note that plaintiff does not provide any notice of dispute from a credit reporting agency and therefore fails to state a claim under 15 U.S.C. § 1681s-2(b). [#49-pp. 26-27].

Pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency (CRA), however this section does not provide for a private cause of action. A private cause of action is provided under 15 U.S.C. § 1681s-2(b), where, upon receipt of a notice from a CRA of a dispute, the furnisher of information is required to investigate within specified time limits to determine the accuracy or completeness of the information provided to the CRA and must modify, delete or block reporting information that is inaccurate, incomplete or cannot be verified.

This process is *only* triggered by the consumer notifying a CRA of a dispute. A furnisher's duty to investigate does not

12 - ORDER

arise unless and until it receives notice of the credit reporting dispute directly from the CRA[12]. An allegedly aggrieved private party cannot bypass the CRA.

Plaintiff provides no evidence of any notice provided to defendants by a CRA as a result of plaintiff's allegations. Additionally, plaintiff's admission that he became late on his payments in April 2009 and has subsequently defaulted on his loan makes any delinquency reported on his loan accurate and plaintiff's FCRA claim unsustainable.

### E) Claim (5) for Fraudulent Misrepresentation:

Plaintiff's fifth claim for fraudulent misrepresentation appears based on some misunderstanding that he had about "material information" regarding the terms of his loan which, had he known, would have prevented him from entering into the transaction. [#40-¶¶ 181-187]. Defendants contend that plaintiff's claim fails because it lacks sufficient specificity regarding the operative facts or actions of defendants that plaintiff claims were fraudulent. [#49-pp.27-28].].

A deceit/fraud/misrepresentation claim in Oregon requires a plaintiff to allege: (1) a knowing, false representation by the

---

[12] Congress provided a filtering mechanism in credit disputes by requiring the disputatious consumer to notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).

13 - ORDER

defendant; (2) an intention to induce plaintiff to act or refrain from acting in reliance on the misrepresentation; (3) justifiable reliance on the representation by plaintiff and (5) damage to the plaintiff resulting from that reliance. *Riley Hill Gen. Contractor, Inc., v. Tandy Corp.*, 303 Or 390, 405 (1987).

The relationship between a lender and a borrower is not one of the confidential relationships envisioned by the court (which has included relationships such as those between a doctor and his patient or a pastor and a church member), which may give rise to this type of claim. *Kriedler v. Taylor,* 473 F.Supp. 2d 1090, 1103 (2007). Thus, plaintiff's fifth claim for fraudulent misrepresentation is unsustainable.

### F) Claim 6 for Breach of Fiduciary Duty:

Plaintiff alleges that defendants breached their fiduciary duty by "fraudulently inducing plaintiffs [sic] to enter into a mortgage transaction which was contrary to plaintiff's stated intentions; contrary to plaintiff's interests . . . ." [#40-¶ 190]. Defendants respond that plaintiff's Amended Complaint does not allege that any of the defendants were involved with the loan origination rather, plaintiff identifies Decision One and Summit as the loan originator and mortgage broker. [#49-p.28 citing #40-¶¶ 25, 28]. Thus defendants did not have any contact with plaintiff at the time of the alleged breach. *Id.*

The elements of a cause of action for breach of fiduciary

14 - ORDER

duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary duty; and 3) resulting damage. *Pallergrini v. Weiss*, 165 Cal.App.4th 515, 524 (2008). Absent special circumstances, there is no actionable duty between a lender and borrower because loan transactions are arms-length and thus do not invoke fiduciary duties. *Oaks Managem't Corp. V. Superior Court,* 145 Cal.App.4th 453, 466 (2006)( no fiduciary relationship between the borrower and lender); see also *Nymark v. Heart Fed. Sav. & Loan Assn.,* 231 Cal.App.3d 1089, 1096 (1991)(as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money).

Oregon law holds that a purchaser must use reasonable care for his own protection and cannot rely blindly on a seller's statements but, must make use of his means of knowledge and failing to do so, cannot claim that he was misled. *Bodenhammer v. Patterson,* 278 Or. 367, 375 (1977). This is because it is well established that the relationship between a lending institution and its borrower-client is not fiduciary in nature. *Uptown Heights Assoc. Ltd. v. Seafirst Corp.,* 320 Or 638, 650 (1995)(arms-length banking and loan transactions do not constitute a special or fiduciary relationship). To establish a fiduciary relationship there must be some standard of care apart

15 - ORDER

from those imposed by a loan agreement or contract. *Uptown Heights,* 320 Or at 650.

Because defendants were not the loan originators or mortgage brokers and even if they were, there would not be a fiduciary relationship between plaintiff and defendants. Plaintiff's sixth claim fails as a matter of law.

### G) Claim 7 for Unjust Enrichment:

Plaintiff alleges that defendants "had an implied contract with plaintiffs [sic] to ensure that plaintiffs [sic] understood all fees which would be paid to the Defendants to obtain credit on plaintiffs' [sic] behalf and to not charge any fees which were related to the settlement of the loan and without full disclosure .. . ." [#40-¶¶ 192-97].

Plaintiff's seventh claim for unjust enrichment fails as a matter of law because, even if defendants were involved in the loan origination, failure by plaintiff to understand the terms by which he bound himself and under which the proceedings went forward would not as a matter of law, state a claim for unjust enrichment. *Best v. U.S. National* Bank, 303 Or 557, 565 (1987)(fees are decided by the reasonable contractual expectations of the parties).

### H) Claims 8 and 9 alleging Civil Conspiracy:

Plaintiff alleges two separate claims of civil conspiracy;

16 - ORDER

both of which flow from plaintiff's allegations of fraud and breaches of fiduciary duty.

A civil conspiracy is "a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." *Yanney v. Koehler*, 147 Or.App. 269, 273 (1997). Civil conspiracy is not a separate tort or basis of recovery but rather depends on the viability of the underlying tort. *Granewich v. Harding*, 329 Or. 47, 53 (1999).

Because the underlying tort claims fail as a matter of law, plaintiff's conspiracy claims also fail.

**I    Claim 12 for Usury:**

Plaintiff alleges that the interest rate charged on his loan was "greater than state law permitted." [#40-¶ 220].

Under ORS 82.010(3)(a) interest on business loans of $50,000 or less may not exceed the greater of 12% or 5% higher than the prevailing Federal Reserve Bank discount rate on 90-day commercial paper in effect when the loan is made. Under ORS 82.010(3)(b), the interest rate that may be charged on other kinds of loans of $50,000 or less is subject to the same limitation. The combined effect of ORS 82.010(3)(a) and (b) is to impose no limitations on interest rates that may be charged for loans exceeding $50,000.

17 - ORDER

Because the loan at issue in this matter far exceeds that amount, plaintiff's usury claim fails as a matter of law.

### J) Claim 13 alleges Predatory Lending:

The sole defendant named in this claim is Summit. Plaintiff alleges that Summit engaged in "predatory lending practices . . . the specifics of which are unknown, but which are subject to discovery" and future amendment of the complaint. [#40-¶¶ 223-225].

Nothing in the record shows that plaintiff has served this defendant (or any of the other newly named defendants), newly added to plaintiff's amended complaint. Plaintiff has 120 days from the date of filing his Amended Complaint within which to serve Summit. Therefore Summit (and the other newly named defendants), must be served no later than April 11, 2011.

### K) Claim 14 alleges Unfair Debt Collection Practices:

Plaintiff simply states that he "is informed, and believes and thereupon alleges" that the defendants have violated provisions of the Federal Fair Debt Collection Act (FDCPA) and RESPA[13]. [#40-¶¶ 226-228]. He does not supply any facts to back this conclusory statement.

However, even without this factual deficit, plaintiff's

---

[13] Nor is there a cause of action that for debt collection pursuant to RESPA.
18 - ORDER

claim would fail. He cannot state a claim under the Fair Debt Collections Practices Act because, the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp.2d 1188, 1204 (D. Or. 2002)("Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property"); see also *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp.2d 176, 190 (S.D. Tex.2007)(mortgage companies collecting debts are not 'debt collectors).

### L)   Claim 17 alleges Refusal of Payment

Plaintiff alleges that BAC's refusal of his "tender of payments is a violation of UCC law . . . ." [#40-¶¶ 234-36]. However, defendants respond that plaintiff's tender was a document that he drew up in which he claims to be a creditor of the United States and a national banking association who therefore, can draw on the debt of the United States to discharge his obligation; in other words his "tender" is not a legitimate tender. [#49-p.30, citing #40-Ex.17].

Under the Oregon law, the term 'tender' has definite legal significance imparting not merely the willingness and intent to perform but also *the ability at the time of tender to pay* in accordance with the offer. *Benbridge v. Miller*, 235 Or 396, 402

19 - ORDER

(1963). Nothing in plaintiff's pleadings indicate that he had or has the ability to pay in accord with his offer.

Plaintiff's seventeenth claim for refusal of payment is therefore dismissed.

## Conclusion

Defendants' Motion to Dismiss is granted in part and denied in part as follows: GRANTED for Claims: (2) violations of RESPA; (3) TILA violation; (4) FCRA violation; (5) fraudulent misrepresentation; (6) breach of fiduciary duty; (7) unjust enrichment; (8) and(9) civil conspiracy; (12) usury; (14) unfair debt collection practices; (15) slander of title; (17) refusal of payment and DENIED for claims: (1) fraudulent assignment; (10) illegal trustee sale; (11) quiet title; (13) predatory lending and (16) fraudulent foreclosure.

IT IS SO ORDERED.

DATED this 31st day of March, 2011.

_Michael C. Hogan_
United States District Judge